IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AIRIGAN SOLUTIONS, LLC,

      Plaintiff,

v.

MORNING CHEF, *et al.*,

      Defendants.

Civil Action No. 24-cv-1407

(Judge Stickman)

**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Plaintiff submits this Memorandum in Support of its Motion for Default Judgment pursuant to Fed. R. Civ. P. 55 (b)(2) seeking entry of Judgment against the defaulting Defendants ("Defendants") on all Counts of the Complaint.

## I.  INTRODUCTION

This memorandum is filed in support of the lawsuit (as set forth in the caption above) that the Plaintiff brought seeking relief from the tireless efforts of the online copycats trying to destroy Plaintiff's business.

In this case, Defendants are sellers of infringing products on at least one of the online marketplaces operated by Aliexpress.com, Amazon.com, eBay.com, Temu.com, Walmart.com, and Wish.com, Defendants engaged in (Count I) patent infringement; (Count II) federal copyright infringement); (Count III) false designation of origin, passing off and unfair competition pursuant to § 43(a) of the Lanham Act; and (Count IV) common law unfair competition.

The remaining Defendants in this lawsuit have all defaulted and failed to cooperate in discovery. The Defendants have been properly served pursuant to Fed. R. Civ. P. 4 and are aware of this action, but nevertheless chose not to respond. The Clerk has entered default. The Plaintiff also served discovery upon Defendants, including Requests for Admission, and no response to the discovery was received.

By their default, Defendants have conceded the truth of the allegations of the Complaint. By their failure to respond to Requests for Admission, Defendants have admitted the matters therein. There are no issues of fact remaining in this suit, and a default judgment should be entered against Defendants providing for permanent injunctive relief, an award of disgorgement of profits of $2,000,000.00 under the Lanham Act and statutory damages of $150,000.00 for intentional copyright infringement, against each individual Defendant as listed on Schedule A for their intentional unfair competition and copyright infringement, a post-judgment asset restraining order, and an order authorizing the release and transfer of Defendants' assets from the Third-Party Service Provider(s) and Financial Institution(s) to satisfy the damages, in whole or in part, awarded to Plaintiff.[1] Courts in the Western District of Pennsylvania have previously entered a default judgment against each defendant in this amount or more using a similar method for proving and calculating damages that is used here. *See, e.g., Airigan Solutions, LLC v. Rainbow Island Store, et al.*, No. 23-1327 (W.D. Pa., October 2, 2023)(Stickman, J.); *Talisman Designs LLC v. Ladynana US*, No. 22-994 (W.D. Pa. October 20, 2022)(Schwab, J); *Doggie Dental, Inc. v Ahui, et al.*, No. 19-cv-1627 (W.D. Pa., Sept. 27, 2021) (Hornak, CJ); *Osprey LLC v. Poolwhale, et al.*, No. 20-cv-1253 (W.D. Pa. December 3, 2020) (Hardy, J); *Doggie Dental, Inc.*

---

[1]    Thought Plaintiff is not waiving its claims under the Patent Act, Plaintiff is not seeking a disgorgement of profits under the Patent Act because the identical profits are being claimed under the Lanham Act.

*v. Anywill*, et al., No. 19-cv-682 (W.D. Pa. August 14, 2020 (Hornak, CJ); and *Doggie Dental, Inc. v. Anywill, et al*., No. 19-cv-746 (W.D. Pa. August 14, 2020 (Hornak, CJ).

**A.    This court has jurisdiction to enter default judgment against Defendants.**

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against Defendants because the Court has subject matter jurisdiction over this action as well as personal jurisdiction over the Defendants. This Court has subject matter jurisdiction over this action pursuant the Lanham Act, the Copyright Act, and the Patent Act. 15 U.S.C. § 112, 17 U.S.C. §§ 101, and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy. *See Complaint*, ¶ 1 [ECF No. 3].

Personal jurisdiction may be established either by specific or general jurisdiction, but specific jurisdiction is appropriate in this case because of Defendants' contact with the forum. *See* 42 P. A. Cons. Stat. § 5322. The factors to consider when establishing specific jurisdiction are: "(1) the extent to which defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the Plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). Defendants satisfy each of the factors to establish specific personal jurisdiction.

First, Defendants purposefully availed themselves of the privilege of conducting business in Pennsylvania and this Judicial District. Defendants purposefully targeted sales of infringing products to Pennsylvania residents, and did in fact sell infringing products into

Pennsylvania. *See Complaint,* ¶ 11 [ECF No. 3]. These actions are sufficient to establish jurisdiction over Defendants. 42 Pa. Cons. Stat. § 5322 (a). Second, Plaintiff's claims arise directly from actions that occurred in this Judicial District. Plaintiff purchased infringing products to determine their authenticity and had the infringing products shipped to Pennsylvania. *See Declaration of Dee Odell* [ECF No. 15]. These unauthorized and unlicensed sales of infringing products in this Judicial district establish this Court's jurisdiction over Defendants.

Lastly, this Court's exercise of specific personal jurisdiction over Defendants is "reasonable" under the constitution. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The record in this case does not suggest that the burden of litigation in this District is extraordinary. Defendants offered to ship and sell their infringing products to any part of the United States. *See Complaint,* ¶ 11 [ECF No. 3]. Pennsylvania and this Court have a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of [Pennsylvania] law. *See Square D Co. v. Scott Elec. Co*., No. 06-459, 2008 WL 4462298, at *12 (W.D. Pa. Sept. 30, 2008). Plaintiffs have a valid and substantial interest in having their legal rights recognized and vindicated. *Id*. Therefore, this Court's exercise of specific personal jurisdiction over Defendants is constitutionally reasonable.

### B. Joinder of the Defendants is appropriate.

Joinder of the defendants is proper when plaintiff seeks relief "jointly, severally, or in the alternative with respect to arising out of the same transaction, occurrence or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). There is no difference in the analysis under either Rule 20 or 35 U.S.C. § 299 of the Patent Act. *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl observing that Section 299 "effectively codifies current law as it has been

applied everywhere outside of the Eastern District of Texas").  Joinder is consistent with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715. 724 (1966).

In a decision on joinder in an online counterfeiting case, the Northern District of Illinois found joinder was appropriate, stating:

> According to the Merriam-Webster dictionary, "transaction" generally involves a "reciprocal effect" or "exchange," whereas an "occurrence" is defined as something that simply "happens" or "appears." Unlike a "transaction," an "occurrence" is not necessarily the product of joint or coordinated action. The internet frequently produces occurrences that can be described as cooperative but not transactional or intentionally coordinated. Individual actions which alone may have minimal impact on society or the economy can have a substantial impact through aggregation that is only possible through the internet. Individuals on the internet can openly reach billions of people with a single click of a mouse, while at the same time hiding their identities, frustrating law enforcement. As a result, an "occurrence" of mass harm easily can be inflicted even if there is no express "transactional" coordination among the attackers.
>
> Rule 20's inclusion of the term "occurrence" should allow plaintiffs to join in a single case the defendants who participate in such unlawful occurrences, despite the lack of a "transactional link." The kind of harmful occurrences the internet enables — including mass foreign counterfeiting — were inconceivable when Rule 20 was drafted. But the Rule's inclusion of the term "occurrence" suggests that joinder is appropriate in cases alleging harm that is not strictly "transactional." *Bose Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-7467 (N.D. Ill. Feb. 19, 2020) (Durkin, J.) at 10-11 [DE 46].

Moreover, in the present case there is something more -- the admitted allegations of the Complaint (*i.e.*, cooperating, communicating, coordinating with a common goal of creating one illegal competing marketplace).  These additional activities further establish the necessary commonality to join the defendants into one action under either Rule 20 or Section 299.  Thus, the well-pled factual allegations of Plaintiff's Complaint properly allege the elements for joinder and the Defendants are properly joined in this case.

Recognizing this, in the *Doggie Dental, Inc. v. CDOFFICE, et al*, No. 21-cv-271, Chief

Judge Hornak ruled joinder of the Defendants was permissible because the Complaint sufficiently alleged the right to relief against the joined defendants arises **"out of the same transaction, occurrence, or series of transactions or occurrences,'** and that are "questions of law or fact common to all the defendants." [ECF No. 126]. For at least these reasons, the Defendants are properly joined in this case. *See also Aquapaw v. Allnice,* No. 20-1954 (W.D. Pa, July 29, 2022) (Wiegand, J.) [ECF No. 85] (joinder of patent defendants appropriate when accused products or processes are the same in respects relevant to the patent).

### B. Plaintiff is entitled to a default judgment against Defendants.

### 1. The Clerk properly entered default as to Defendants.

The Clerk of this Court enters a default "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk entered default against Defendants because, as the docket reflects, the time for filing a responsive pleading expired.

### 2. Factual allegations establish the defaulting Defendants' liability.

By failing to appear, contact Plaintiff, or otherwise defend against the Complaint, Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether Plaintiff's Complaint properly states a claim for relief. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Pair Networks, Inc. v. Lim Cheng Soon*, 2013 WL 452565, *1 (W.D. Pa., February 6, 2013).

### A. Liability for Patent Infringement

Liability for patent infringement is established when a defendant "makes, uses, offers to

sell, or sells any patent invention, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271. The well-pled factual allegations of Airigan Solution's *Complaint* [ECF No. 3], including specifically those in Paragraphs 64 - 68, properly allege the elements for each of the above claims. Furthermore, through its patent and detailed evidence of the Defendants' infringing products, Plaintiff has proven that the Infringing Products literally infringe all elements in claim 1 of U.S. Patent No. 9,968,211.

In addition to the well pled factual allegation, admitted by default, and established by the evidence, Defendants have also made certain admissions by failing to respond to the *Request for Admission* served upon them. *See Declaration of Brian Samuel Malkin in Support of Motion for Entry of Default Judgment and Permanent Injunction Judgment* ("*Malkin Dec in Support of DJ.*"), ¶ 5. These deemed admissions include the following:

> **At all times relevant hereto, Defendant knew that Plaintiff owned both U.S. Trademark Reg. No. 5,142,630 for the word mark "NEGG and U.S. Patent No. 9,968,211 entitled "PERSONAL EGG PEELER", and Defendant knew that Plaintiff had the exclusive right to use and license its intellectual property and the goodwill associated therewith.**
>
> **Despite having the knowledge that you had no license or legal authority to do so, you engaged in the activity of promoting and otherwise advertising, selling, offering for sale, and/or distributing counterfeit goods under your Seller ID or Seller IDs.**
>
> **At all times relevant hereto, you have been engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and/or sale of goods that are counterfeit and substandard copies of Plaintiff's genuine NEGG® egg peeler.**
>
> **You intentionally make, use, offer to sell, or import into the United States counterfeit and substandard copies of Plaintiff's genuine NEGG® egg peeler with English language packaging and instructions.**
>
> **There is no acceptable product that is an alternative to Plaintiff's patented NEGG® egg peeler that does not infringe a claim of U.S. Patent No. 9,968,211**

entitled **"PERSONAL EGG PEELER"**.

**You willfully infringed of a claim of U.S. Patent No. 9,968,211 entitled "PERSONAL EGG PEELER".**

### B. Liability for Copyright Infringement

Liability for copyright infringement is established when the plaintiff demonstrates two elements: (1) ownership of a copyright and (2) copying by the defendant. *Dam Things From Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002).   Plaintiff has demonstrated through its images attached to the Complaint, copyright registration, and screenshots of Defendants' website advertising, that each of the Defendants infringed on Plaintiff's copyrighted images.

### C. Liability for Unfair Competition

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Airigan Solutions must prove that the Defaulting Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of the Defaulting Defendants with Airigan solutions, or as to the origin, sponsorship, or approval, of the Defaulting Defendants' goods by Airigan Solutions.  15 U.S.C. § 1125(a)(1).  In this case, the use of the copyrighted photos and other photos Plaintiff uses to designate and advertise its goods. As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Whether a defendant's use of plaintiff's trademarks created a likelihood of confusion

between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Pennsylvania. *Mateson Chemical Corp. v. Vernon,* 2000 WL 680020, at \*5 n. 7 (E.D.Pa. May 9, 2000).

It has long been established in the Third Circuit that unfair competition includes using a plaintiff's photographs to pass off knock-off products and divert sales from the plaintiff.  In *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650 (3d Cir. 1954), the Court found a Complaint properly pleaded a violation Section 43(a) of the Lanham Act when alleging that the defendant was using photographic reproductions of plaintiff's dress in order to sell its inferior, poor-quality knock-off of the same dress. In this case, all Defendants used a photograph of Plaintiff's product to sell their knock-off products. See *Odell Dec.*[2] [ECF No. 15]

Further, the test to determine trademark infringement liability under Pennsylvania common law is the same as the likelihood of consumer confusion test outlined in Section 32(a) of the Lanham Act.  *See, e.g., Tillery v. Leonard & Sciolla LLP,* 521 F. Supp. 2d 346, 348 n.1 (E.D. Pa. 2007), *See also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994).

### 3. The damages are established by the evidence.

Defendants admitted to the complaint allegation that they made more than $2,000,000.00 by selling the Infringing Products. Complaint, ¶ 63 [ECF No. 3], Defendants have also made certain admissions about damages by failing to respond to the *Requests for Admissions* served upon them.  *See Malkin Dec.*, ¶ 5.  These deemed admissions include the following:

> You made more than $2,000,000.00 (United States Dollars) in profit on the sales of the counterfeit goods.

---

[2] Refers to *Declaration of Dee Odell* [ECF No. 14]

Accordingly, a Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure considering the evidence on damages, as discussed below, should be entered against the Defaulting Defendants.

**A. Plaintiff is entitled to disgorgement of profits under the Lanham Act.**

Under the Lanham Act, once liability is established, "…the plaintiff shall be entitled…subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."[3] *See* 15 U.S.C. § 1117 (a). The court's determination of a damage award is based upon considerations of "equity, reason, and pragmatism." *World Entertainment, Inc. v. Brown, et al.*, No. 09-5365 (E.D. Pa., May 20, 2011), *slip op.* at 5 [ECF No. No. 64] (citations omitted).

In *Banjo Buddies, Inc. v. Renofsky*, 399 F. 3d 168, 175 (3d. Cir. 2005), the Third Circuit has set forth a five-factor test to determine when disgorgement of the defendant's profits is appropriate. These factors "include, but are not limited to (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making misconduct unprofitable, and (6) whether it is a case of palming off." Based upon the facts as well plead by the Plaintiff and admitted by the Defendants' defaults, each of these factors weigh in favor of the disgorgement of the defendants' profits.

Section 35(a) of the Lanham Act provides that "[i] accessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction

---

[3]   Damages for Count V (common law unfair competition) are encompassed in any damages awarded under 15 U.S.C. § 1117(a) for Count III (federal unfair competition).

claimed." 15 U.S.C. § 1117(a); *Banjo Buddies, Inc.*, 399 F. 3d at 176. The Supreme Court has made it clear that:

> [t]he burden is the infringers to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on the sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer. *WMS Gaming, Inc. v. WPC Prods. Ltd.,* 542 F.3d 601, 608 (7th Cir. 2008), *citing Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942). *See Also Wesco Mfg. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987) ("Although the exact amount of infringing sales cannot be determined from the [evidence], exactness is not required. [The defendant] is in the best position to ascertain exact sales and profits, and it bears the burden of doing so in an accounting.); *Id.* at 1487-88 ("A plaintiff need not demonstrate actual damage to obtain an accounting of an infringer's profits under Section 35 of the Lanham Act. It is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales." (citations omitted)).

In cases where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount. *See WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. Ill. 2008) ("[t]he burden was therefore on PartyGaming to show that certain portions of its revenues…were not obtained through its infringement of WMS's marks."); *Chloe v. Queen Bee of Beverly Hills*, 2009 U.S. Dist. LEXIS 84133, at *15-17 (S.D.N.Y. Jul. 16, 2009) (entering profits award for the entire revenue amount in trademark infringement case even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products [as opposed to other products not at issue in this case] or as to the costs incurred in acquiring and selling these products."). Under normal circumstances, it is the infringer who bears the burden of "offering a fair and acceptable formula for allocating a given portion of overhead to the particular infringing items in issue." *Deckers Outdoor Corp. v. ShoeScandal.com, Ltd. liability Co.*, No. CV 12-7382 ODW (SHx), 2013 U.S. Dist. LEXIS 168545, at *12 (C.D. Cal. Nov. 25, 2013), citing *Sunbeam Prods., Inc. v. Wing*

*Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004) *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005). "But if the infringer has failed to produce any evidence … the Court must determine the costs to be subtracted from revenue based on the evidence it has to determine profits." *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998).

Since defaulting Defendants have chosen not to participate in these proceedings, Plaintiff have limited available information regarding defaulting Defendants' profits from the sale of infringing products. Defaulting Defendants have failed to appear in this matter and have not produced any documents or information: (1) characterizing each of the transactions in their financial accounts, (2) other accepted payment methods; or (3) other Internet stores that they may be operating. As such, defaulting Defendants have not met their burden to apportion gross receipts between infringing and non-infringing product sales, or to show any deductions. *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008); *Nordock, Inc. v. Systems, Inc.*, 2017 U.S. Dist. LEXIS 192413, at * 7.

By failing to respond to Plaintiff's Discovery and failing to answer the Plaintiff's Complaint, each defaulting Defendant has admitted that profits from the sale of the infringing products totals more than $2,000,000. *Complaint*, ¶ 63; *see* Fed. R. Civ. P. 36(a)(3). Because defaulting Defendants have not met their burden of apportioning gross sales or showing any deductions, the Court should award two million dollars ($2,000,000) from each defaulting Defendant based on the Defendants' failure to answer. Deemed admissions have previously been used to establish profits to be disgorged in cases against sellers on online marketplaces. *Fitness Anywhere LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-4155 (N.D. Ill., Sept. 26, 2019) (Lee, J.), and *LMVH Swiss Manufactures S.A. v.*

*The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-4383(N.D. Ill., Sept. 25, 2019) (Coleman, J.).

A deemed admission of two million dollars ($2,000,000) in profit to be disgorged is not objectively unreasonable. This Court awarded, in part, $2,000,000.00 in damages as profit to be disgorged in *Talisman Designs, LLC v. Ahappyday*, No. 20-cv-1915 (W.D. Pa, February 24, 2022)(Colville, J) [ECF No. No. 79] and *Talisman Designs v. Angelworld*, No. 21-cv-1292 (W.D. Pa., February 24, 2022)(Colville, J)[ECF No. No. 50]. Also, in similar cases in this District the court has awarded two million dollars ($2,000,000) in statutory damages against each defendant. Such an award serves the public interest in making the misconduct unprofitable and deter future willful violations. entered maximum statutory damages against Defendants in other online counterfeiting cases.  *See Airigan Solutions, LLC v. Rainbow Island Store, et al.*, No. 23-1327 (W.D. Pa., October 2, 2023)(Stickman, J.), *Rapid Slicer LLC v. Art-House*, No. 19-411 (W.D. Pa., Jan. 9, 2020) (Horan, J.) (same), and *Airigan Solutions, LLC v. Abagail,* No. 19-cv-503 (W.D. Pa., Aug 13, 2019) (Fischer, J.) (same).  *See Doggie Dental v. Anywill*, No. 19-cv-682 (W.D. Pa., August 14, 2020)(Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282(W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuye*r, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ) (award of at least $2 million in damages against each defendant in collection of preceding list of casts).  In short, in all anticounterfeiting cases in this district, the Court has awarded the maximum damages under the law.

**B. Plaintiff is entitled to statutory damages under the Copyright Act.**

A Plaintiff may be awarded statutory damages under the Copyright Act in addition to a disgorgement of a defendant's profits under the Lanham Act. Other courts have made such

awards on default judgment motions, particularly where the defendant's infringement has been willful. *Starbucks Corporation v. Glass*, 2016 WL 6126255 (C.D. Cal. 2016) ("While a plaintiff must choose between recovering statutory damages and actual damages under either Lanham Act and the Copyright Act, nothing prohibits a plaintiff from seeking statutory damages under one act and actual damages under the other, or vice versa."), *citing Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994). Courts have also awarded statutory damages under both the Copyright and Lanham Acts. *Ontel Products Corporation v. Airbrushing Makeup Store*, 2017 WL 1969681 (S.D.N.Y. 2017) (due to defendants' willful counterfeiting, the court awarded statutory damages under the Copyright and Lanham Acts); *Yash Raj Films (USA), Inc. v. Sidhu*, 2010 WL 1032792 (E.D. Cal. 2010) (court awarded same as a deterrence).

A plaintiff may pursue statutory damages of up to $150,000.00 per infringement for willful copyright infringement. 17 U.S.C. § 504(c)(2). Defendants purposefully infringed Plaintiff's copyrighted images for profit. *See Complaint*, ¶¶ 61 - 64. By their failure to respond, Defendants have admitted their infringement is willful. *See Evony, LLC v. Holland*, No. 2:11-CV-00064, 2011 WL 1230405 (W.D. Pa. Mar. 31, 2011). *See also Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (infringement is deemed willful "[b]y virtue of the default"). Because Defendants willfully infringed Plaintiff's copyrighted images to sell knockoff goods, Plaintiff is entitled to statutory damages of $150,000 per infringement of copyrighted image per defendant. In the *Evony* case, Judge McVerry awarded the maximum statutory copyright damages of $300,000 ($150,000 for each of the two works infringed) as a deterrent against the defaulting defendant for its willful infringement of the Plaintiff's copyrighted works. Likewise, Chief Judge Hornak has also awarded the maximum damages for each instance of copyright infringement committed by each defendant. *See Doggie Dental v. Anywill*, No. 19-cv-

682 (W.D. Pa., August 14, 2020)(Hornak, CJ); *Doggie Dental v. Max_Buy*, 19-746 (W.D. Pa., August 14, 2020) (Hornak, CJ); *Doggie Dental v. Go Well*, 19-1282(W.D. Pa., August 14, 2020) (Hornak, CJ); and *Doggie Dental v. Worthbuye*r, 19-1283 (W.D. Pa., August 14, 2020) (Hornak, CJ).

**4. Plaintiff is Entitled to Permanent Injunctive Relief**

In addition to the foregoing relief, Plaintiff seeks entry of a permanent injunction enjoining Defendants from infringing or otherwise violating Plaintiff's rights in its NEGG® egg peeler, including at least all injunctive relief previously awarded to by this Court to Plaintiff in the temporary restraining order and preliminary injunction. *See Evony, LLC v. Holland*, No. 2:11-CV-00064, 2011 WL 1230405, at *7 (W.D. Pa. Mar. 31, 2011) (" In this case, Plaintiffs have achieved "actual success on the merits" through the admission of liability arising from Defendant's default. Furthermore, the Verified Complaint establishes that Defendant unlawfully sells and distributes copyrighted and trademarked material of the Plaintiffs. Nothing in the facts before the Court indicates that Defendant has ceased this infringing activity; thus, a permanent injunction is warranted in this case on all claims of the Verified Complaint."). Plaintiff is also entitled to injunctive relief so it can can prompt action against any new online marketplace acounts or websites that are identified, found to be linking to Defendants, and selling Infringing Product. A plaintiff is entitled to a permanent injunction under the Lanham Act, Patent Act, and Pennsylvania common law. 15 U.S.C. § 1116; 35 U.S.C. § 283; and *B&B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 760 (W.D. Pa. 2007) (*citing Brody's, Inc. v. Brody Bros., Inc.*, 454 A.2d 605, 607 (Pa. Super. Ct.1982)).

A permanent injunction, like the damages under the Lanham Act and the Copyright Act, would help deter other individuals or corporations from infringing Plaintiff's valuable trademark

and patent rights.  Additionally, entry of a permanent injunction against Defendants in this case will help expedite any future litigations between the defaulting Defendants and Plaintiff, if a case between the parties arises in the future.  This equitable result would be in the interest of justice and provide Plaintiff with more flexibility to protect its intellectual property rights.  As such, permanent injunctions are routinely entered by other Courts in similar online counterfeiting cases.  *See* n.3, *supra*, and cases therein and our Courts have agreed with that practice. *See*, *e.g.*, *Airigian v. Bufugiujan, et al.*, 18-cv-1330-NBF and *Airigan v. Artifacts-Selling, et al*, 18-cv-1462-NBF, and *Airigan v. Babymove*, *et al.*, 19-cv-166-NBF.

### 5. Plaintiff Requests That This Court Order the Transfer to It of Remaining Assets in Defaulting Defendants' Accounts

Plaintiff requested a temporary restraining order and preliminary injunction, *inter alia*, to prevent Defendants from transfering the funds held in their Third Party Service Provider(s) and Financial Institution(s) accounts beyond this Court's jurisdiction.[ECF No. 4] This Court granted the temporary restraining order and preliminary injunction, preventing Defendants from accessing the funds in their Third Party Service Provider(s) and Financial Institution(s) accounts.  [ECF Nos. 18, 27] This Court found that Plaintiff had established a likelihood of success on the merits and irreparable harm in the absence of a temporary restraining order and preliminary injunction.  *See Id.*

Plaintiff now requests that this Court order the Third Party Service Provider(s) and Financial Institution(s) to transfer to Plaintiff the assets currently held in the defaulting Defendants' Third Party Service Provider(s) and Financial Institution(s) accounts in partial payment of any award of damages.  In the absence of such an Order, it is likely that Plaintiff will be left without any effective means by which to collect from

Defendants any monetary judgment entered by this Court.  As explained, previously, Defendants and any assets they won, other than those held in their respective Third Party Service Provider(s) and Financial Institution(s) accounts, are presumably located in China.  There is no bilateral treaty or mulitlateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments. Moreover, as explained in some detail previously, Defendants are involved in illegal counterfeiting operations and go to great lengths to conceal their identities and whereabouts.  As a result, even in the unlikely event that Plaintiff could enforce a U.S. judgment in the Chinese courts, it will be virtually impossible to locate Defendnats or any assets they may hold in order to satisfy any monetary damages awarded in this case.

Such orders are routinely entered by other Courts to satisfy monetary judgment awards in similar counterfeiting cases.  *See*, *e.g.*, *Airigan Solutions, LLC v. Rainbow Island Store, et al.*, No. 23-1327 (W.D. Pa., October 2, 2023)(Stickman, J.), *Airigian v. Bufugiujan, et al.*, 18-cv-1330-NBF and *Airigan v. Artifacts-Selling, et al*, 18-cv-1462-NBF, and *Airigan v. Babymove*, *et al.*, 19-cv-166-NBF. Courts in other juridictions have also entered such transfer orders. *See, e.g., Eye Safety Sys., Inc. v. The Partnerships and Unicorporated Ass'ns. Identified in Schedule "A"*, Case No. 18-cv-00034 [D.E. 41] (N.D. Ill. Mar. 1, 2018) (ordering PayPal to transfer defendants' funds to plaintiffs as partial satisfaction of judgment); *Spin Master Ltd. v. The Unincorporated P'ships and Ass'ns. Identified in Schedule "A"*, Case No. 18-cv-01270 [D.E. 39] (N.D. Ill. Apr. 25, 2018) (same); *Levi Strauss & Co. v. The Unicorporated P'ships and Ass'ns. Identified in Schedule "A"*, Case No. 17-cv-04561 [D.E. 33] (N.D. Ill. Aug. 1, 2017) (same); *Yeti Coolers, LLC v. Taneil George*, Case No. 17-cv-62215 [D.E. 46] (S.D. Fl. Mar. 29, 2018)

(same); *Mycoskie, LLC v. csmlong188*, Case No. 17-cv-60782 [D.E. 43] (S.D. Fl. Jul. 21, 2017) (same); *Fendi Adele, S.R.L. v. alma Hernandez*, Case No. 17-cv-62379 [D.E. 37] (S.D. Fl. Jan. 28, 2018) (same); *Burberry Ltd. v. The Partnerships and Unicorporated Ass'ns. Identified in Schedule "A"*, Case No. 17-cv-03255 [D.E. 37] (N.D. Ill. June 7, 2017) (same); *Louis Vutton Mallietier, S.A. v. Andrew Henry*, Case No. 17-cv-61034 [D.E. 40] (S.D. Fl. Aug. 22, 2017) (same); *Cartier Int'l A.G. v. Anotoky*, Case No. 17-cv-60831 [D.E. 38] (S.D. Fl. Jul. 6, 2017) (same); *Lacoste Alligator S.A. v. 6666 store*, Case No. 17-cv-60046 [D.E. 49] (S.D. Fl. Jun. 28, 2017) (same); *Gucci Am., Inc. v. 8710 t-shirt shop*, Case No. 16-cv-63002 [D.E. 58] (S.D. Fl. Mar. 27, 2017) (same); and *Louis Vuitton Malletier, S.A. v. afste nxmu*, Case No. 17-cv-61819 [D.E. 39] (S.D. Fl. Dec. 12, 2017) (same).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment; enter judgment against Defendants for (Count I) patent infringement; (Count II) federal copyright infringement); (Count III) false designation of origin, passing off and unfair competition pursuant to § 43(a) of the Lanham Act; and (Count IV) common law unfair competition; permanently enjoin Defendants; award Plaintiff statutory damages consistent with 15 U.S.C. § 1117(c) and disgorgement of profits under § 43(a) of the Lanham Act; award Plaintiff pre-judgment interest and post-judgment interest on the above damages awards; and grant such further relief as this Court deems appropriate.  Plaintiff additionally requests that this Court order the Third Party Service Provider(s) and Financial Institution(s) to transfer Defendants' assets held by the Third Party Service Provider(s) and Financial Institution(s) to Plaintiff in partial payment of any default judgment entered against Defendants.

Respectfully submitted,

Dated:  December 3, 2024

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone
(412) 741-9292 - Facsimile